**UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE**


Prayer Feather Farrow


     v.                                                    Civil No. 10-cv-058-PB


William L. Wrenn et al.[1]


**REPORT AND RECOMMENDATION**

Pro se plaintiff Prayer Feather Farrow has filed a complaint
(doc. no. 1), asserting that defendants have violated, and
continue to violate, his federal statutory and constitutional
rights by applying a prison policy to restrict his practice of a
Native American (Lakota) religion.  The complaint (doc. no. 1) is
before me for preliminary review to identify cognizable claims
and to dismiss portions that, among other things, fail to state a
claim upon which relief can be granted or seek monetary relief
from any defendant who is immune.  See 28 U.S.C. § 1915A
(requiring district courts to screen prisoner complaints seeking
redress from government officers and agencies); United States

---

[1]In addition to William L. Wrenn, Commissioner, New
Hampshire Department of Corrections, the complaint (doc. no. 1)
names as defendants Larry Blaisdell, Warden, Northern New
Hampshire Correctional Facility ("NCF"); and Susan Young, NCF
Program Director.

District Court for the District of New Hampshire Local Rule
("LR") 4.3(d)(2) (magistrate judge is designated to conduct
preliminary review of prisoner complaints).

### Standard of Review

Under LR 4.3(d)(2), when a prisoner files an action pro se,
the magistrate judge conducts a preliminary review.  In a
preliminary review, pro se pleadings are construed liberally,
however inartfully pleaded.  See Erickson v. Pardus, 551 U.S. 89,
94 (2007) (per curiam) (following Estelle v. Gamble, 429 U.S. 97,
106 (1976), to construe pro se pleadings liberally in favor of
the pro se party).  "The policy behind affording pro se
plaintiffs liberal interpretation is that if they present
sufficient facts, the court may intuit the correct cause of
action, even if it was imperfectly pled."  Ahmed v. Rosenblatt,
118 F.3d 886, 890 (1st Cir. 1997); see also Castro v. United
States, 540 U.S. 375, 381 (2003) (courts may construe pro se
pleadings to avoid inappropriately stringent rules and
unnecessary dismissals).  This review ensures that pro se
pleadings are given fair and meaningful consideration.

To determine if a pleading filed pro se should be dismissed
for failing to state a claim on which relief could be granted,

2

the Court must consider whether the allegations, construed
liberally, Erickson, 551 U.S. at 94, "contain sufficient factual
matter, accepted as true, to 'state a claim to relief that is
plausible on its face.'"   Ashcroft v. Iqbal, ___ U.S. ___, ___,
129 S. Ct. 1937, 1949 (2009) (citation omitted).  "A claim has
facial plausibility when the plaintiff pleads factual content
that allows the court to draw the reasonable inference that the
defendant is liable for the misconduct alleged."  Id.  Inferences
reasonably drawn from the plaintiff's factual allegations must be
accepted as true, but the Court is not bound to credit legal
conclusions, labels, or naked assertions, "devoid of 'further
factual enhancement.'"  Id. (citation omitted).  Determining if
the pleadings state a viable claim is a "context-specific task
that requires the reviewing court to draw on its judicial
experience and common sense."  Id. at 1950 (citation omitted).

## Background

     Farrow is an inmate at the Northern New Hampshire
Correctional Facility ("NCF"), a state prison facility in Berlin,
New Hampshire, that receives federal funding.  Farrow has
practiced a Lakota religious tradition for more than eight years
while at NCF.  Farrow's religion involves ritual purification by

3

rubbing certain "smudging" herbs on his skin, with or without burning the herbs first, personal prayer through contact with sacred items that Farrow keeps in his cell, sweat lodge ceremonies four times per year, ceremonial drumming, pipe smoking, and the use of pipe tobacco and knicknick (a mixture of cedar, sweet grass, and sage, which may also contain tobacco) to wrap together in prayer ties.

Prison policies regarding prisoner property and security have affected how Farrow and other prisoners practice their Native American religious traditions.  Farrow and other prisoners may keep certain sacred items in their cells (in Farrow's case, feathers, stones, and a medicine bag), but smudging herbs, the pipe, pipe tobacco, and other items including, presumably, the drum, are stored outside of their cells at NCF.  Because they need tobacco and knicknick for making prayer ties, tobacco and pipes for pipe ceremonies, drumming for ceremonial purposes, and smudging herbs for ritual purification before they can touch their sacred items, Farrow and other inmates have had to gather together at NCF in the past for personal prayer, pipe smoking, and drumming outside of their cells, on their own for a period of years, and later, under the supervision of volunteers or the

prison chaplain.

Prison Policy Directive ("PPD") 7.17 (effective Aug. 5, 2009) states, in pertinent part, that inmates may not lead religious groups if approved volunteers can be identified or recruited, or if staff supervision is available.  Since 2000, volunteers have come to NCF only four times per year, to oversee sweat lodges, a Native American religious ceremony.

In the past, for a period lasting about five years prior to 2006, prisoners with C-2 or C-3 classifications, including Farrow, gathered on their own each week in a fenced-in area under video surveillance with guards on duty, to practice ceremonial drumming, ritual purification with smudging herbs, prayer with sacred items, pipe smoking, and to make prayer ties from tobacco and knicknick.  These gatherings occurred each week until about 2006 without any security incidents.  From about 2006 until fall 2009, the prison chaplain supervised the prisoners' weekly sacred circle activities.  The chaplain's involvement and access to smudging herbs, knicknick, the pipe, and tobacco allowed Farrow and others to practice their religious traditions and to sharpen their ceremonial drumming skills each week.  Since fall 2009, however, the chaplain has not supervised the weekly sacred

circle.  Farrow and other prisoners have not been allowed to
continue this practice on their own and have consequently lost
their weekly access to pipe tobacco, smudging herbs, knicknick,
and drum practice.  No volunteers have come to the prison to
supervise weekly sacred circle gatherings since 2000.

Farrow complained in writing to Chaplain Dana Hoyt in
November 2009.  Specifically, Farrow pointed out that volunteers
come to the prison only four times annually, and that he and
other inmates need weekly access to smudging herbs, the pipe,
knicknick, and tobacco, and an opportunity to practice drumming.
Defendant Susan Young, NCF Program Director and, presumably, the
chaplain's supervisor, responded to Farrow's complaint to Hoyt,
referring Farrow to PPD 7.17 and citing the chaplain's increased
responsibilities as the reason why he stopped overseeing the
gathering.  Young suggested that Farrow and other prisoners
contact the chaplain to acquire contact information for possible
volunteers.

Farrow filed a grievance with the NCF Warden Blaisdell
regarding Young's response to Farrow's concerns.  Farrow
asserted, among other things, that PPD 7.17, as applied, limits
his ability to practice his religious traditions to four times

annually, when volunteers come to the prison for sweat lodge
ceremonies.  Farrow requested, among other things, that inmates
be permitted to gather on their own for a sacred circle each
week, and that drumming practice be permitted.  Unit Manager
Robert Thyng, on Blaisdell's behalf, denied the grievance, citing
PPD 7.17 and stating that an approved volunteer must be available
to supervise these religious activities.

Farrow appealed Blaisdell's decision to defendant
Commissioner Wrenn, pointing out to Wrenn that Farrow's federal
statutory and constitutional rights to practice his religion were
at stake.  Farrow specifically requested permission to purchase
and keep a reasonable amount of smudging herbs and knicknick in
his cell.  Farrow also asked Wrenn to assign Department of
Corrections ("DOC") staff to supervise a weekly period for
smudging and pipe ceremonies, or for more frequent sweat lodges.
Wrenn's response was that the DOC was not prepared to change any
prison policies or practices at this time.

Farrow has asserted that defendants, all of whom have
supervisory roles, "shaped" PPD 7.17 to close down minority
religious groups, and that PPD 7.17, as applied, has deprived him
of rights under the First Amendment and the Religious Land Use

and Institutionalized Persons Act of 2000 ("RLUIPA"), 42 U.S.C.
§§ 2000cc-1 to -5.  Farrow claims an entitlement to practice his
religion meaningfully at NCF, without the interference of a rule
that renders his personal religious practices dependent on the
availability of outside volunteers.  Specifically, Farrow has
asserted the following claims in the complaint (doc. no. 1)[2]:

1.    PPD 7.17, as applied, violates Farrow's rights under the
      First Amendment's Free Exercise clause.

2.    PPD 7.17, as applied, violates Farrow's rights under RLUIPA.

3.    The prison policy limiting Farrow's ability to keep a
      reasonable amount of knicknick and smudging herbs in his
      cell violates Farrow's rights under the First Amendment's
      Free Exercise clause.

4.    The prison policy limiting Farrow's ability to keep a
      reasonable amount of knicknick and smudging herbs in his
      cell violates Farrow's rights under RLUIPA.

      Farrow has requested injunctive relief, but not damages.
Farrow has specifically asked this court to order defendants:  to
arrange weekly religious services for him, supervised by prison
staff; and to allow him to purchase and keep a reasonable amount
of smudging herbs and knicknick in his cell for use in personal

---

[2]The identification of the claims in this Report and
Recommendation will be considered to be the claims raised in the
Complaint (doc. no. 1).  If Farrow disagrees with this
identification, he must file an objection within fourteen (14)
days of receipt of this notice, or properly move to amend the
Complaint.

prayer.

In addition, Farrow has asked that defendants reimburse his filing fee.  I do not construe his request as a claim for money damages.  If Farrow prevails in his claims for injunctive relief, the clerk would, as a matter of course, tax such costs on defendants.  <u>See</u> 28 U.S.C. § 1920(1) (clerk's filing fee may be taxed as part of costs awarded to prevailing party, as part of judgment or decree); <u>see also</u> Fed. R. Civ. P. 54(d)(1) (costs should generally be allowed to prevailing party, and clerk may tax such costs on 14 days' notice).

Farrow has not asked this court to issue a preliminary injunction, despite his assertion of continuing, substantial violations of his rights.  Should Farrow wish to request such relief, he must do so by filing an appropriate motion under Fed. R. Civ. P. 65(a).

Discussion

I.   <u>Section 1983 Claims</u>

Farrow has alleged in the complaint (doc. no. 1) that state officials are liable to him for violating his First Amendment right to practice his religion freely.  The federal civil rights act, 42 U.S.C. § 1983, provides a cause of action for such

9

claims.[3]

    A.   <u>First Amendment</u>

The First Amendment's Free Exercise Clause "requires government respect for, and noninterference with, the religious beliefs and practices of our Nation's people." <u>Cutter v. Wilkinson</u>, 544 U.S. 709, 719 (2005). This provision applies to the states under the Fourteenth Amendment. <u>See</u> <u>Elk Grove Unified Sch. Dist. v. Newdow</u>, 542 U.S. 1, 6 n.4 (2004).

"[A] prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system," <u>Pell v. Procunier</u>, 417 U.S. 817, 822 (1974), including the right to the free exercise of religion. <u>O'Lone v. Estate of Shabazz</u>, 482 U.S. 342, 348 (1987) (citing <u>Cruz v. Beto</u>, 405 U.S. 319, 322 (1972)). A prisoner's sincerely held religious beliefs must

---

[3]42 U.S.C. § 1983 provides as follows:

> Every person who under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . .

yield if contrary to prison regulations that are "reasonably related to legitimate penological interests." Turner v. Safley, 482 U.S. 78, 89 (1987). This Court must accord prison administrators significant deference in defining legitimate goals for the corrections system, and for determining the best means of accomplishing those goals. See Overton v. Bazzetta, 539 U.S. 126, 132 (2003); Pell, 417 U.S. at 826-27.

A court, in evaluating whether or not a particular prison regulation is constitutional, considers four factors: (1) whether the regulation has a "valid, rational connection" to a legitimate penological objective, (2) "whether any alternative means are open to inmates to exercise the asserted right," (3) "what impact an accommodation of the right would have on guards and inmates and prison resources," and (4) "whether there are ready alternatives to the regulation." Overton, 539 U.S. at 132 (citing Turner, 482 U.S. at 89-91). Here, Farrow has alleged that he cannot practice his religion and maintain a meaningful prayer life at NCF because of prison policies that have made his individual religious practices (including personal prayer and communal drumming) contingent on the availability of outside volunteers. He has pointed to a number of alternatives to this

11

policy that appear to have no adverse impact on prison safety,
staffing, or resources.  Construing the factual allegations in
the complaint liberally, I conclude that Farrow has asserted
sufficient facts to state claims for relief under the First
Amendment, relating to those prison policies limiting his access
to sacred objects, knicknick, tobacco, and drumming, unless
volunteers are present, and in an Order issued this date, I have
directed service of these First Amendment claims.  I express no
opinion at this time regarding whether these policies may
ultimately be found to be consistent with the First Amendment as
reasonably related to legitimate penological interests.

     B.   Official/Individual Capacity Claims

     Farrow explicitly asserts claims against defendants in their
individual capacities.  Because he makes no claim for monetary
damages (apart from costs), I construe the Complaint (doc. no. 1)
to assert claims for injunctive relief under section 1983 against
defendants in their official capacity only.  See Greenawalt v.
Ind. Dep't of Corr., 397 F.3d 587, 589 (7th Cir. 2005)
(injunctive relief is unavailable in action filed under 42 U.S.C.
§ 1983 against state officials solely in their individual
capacities).  Accordingly, I recommend dismissal of the

12

individual capacity claims.

     C.   <u>Supervisory Capacity Claims</u>

     Farrow has alleged that defendants Wrenn, Blaisdell, and Young are responsible for developing and applying policies, including PPD 7.17, affecting the practice of religion at the NCF.  Young, presumably the chaplain's supervisor, is, in turn, Blaisdell and Wrenn's subordinate.  Further, in their capacities as supervisors, defendants are responsible for administering grievance procedures.

     "Supervisory liability under § 1983 cannot be 'predicated on a respondeat theory, but only on the basis of the supervisor's own acts or omissions.'"  <u>Aponte Matos v. Toledo Davila</u>, 135 F.3d 182, 192 (1st Cir. 1998) (citation omitted).  A supervisor must be either "a primary actor involved in, or a prime mover behind, the underlying violation."  <u>Camilo-Robles v. Zapata</u>, 175 F.3d 41, 43-44 (1st Cir. 1999).  In other words,

> supervisory liability lies only where an
> affirmative link between the behavior of a
> subordinate and the action or inaction of his
> supervisor exists such that the supervisor's
> conduct led inexorably to the constitutional
> violation.  Further, supervisory liability under a
> theory of deliberate indifference will be found
> only if it would be manifest to any reasonable
> official that his conduct was very likely to
> violate an individual's constitutional rights.

13

<u>Maldonado v. Fontanes</u>, 568 F.3d 263, 275 (1st Cir. 2009)
(internal quotations and citations omitted).  A supervisor is not
deliberately indifferent, for purposes of § 1983 liability, if he
or she is alleged merely to have been present for, or otherwise
obtains knowledge of, the wrongdoing of a subordinate, or if the
supervisor promulgated a policy that does not, on its face,
direct or condone the wrongful conduct of subordinates.  <u>Id.</u>

    Here, plaintiff alleges that each named defendant directly
participated in the unconstitutional deprivations alleged, by
making and applying policies that render his religious practices
contingent on the availability of volunteers, and, in their
supervisory capacities, condoned those deprivations by refusing
to remedy the violations brought to their attention through the
grievance process.  Accordingly, these defendants can be sued in
their supervisory capacities under section 1983.

II.  <u>RLUIPA</u>

    RLUIPA prohibits state governments from imposing

a substantial burden on the religious exercise of a person
residing in or confined to an institution . . . even if the
burden results from a rule of general applicability, unless
the government demonstrates that imposition of the burden on
that person --

       (1) is in furtherance of a compelling governmental
       interest; and

>        (2) is the least restrictive means of furthering that
>        compelling governmental interest.

42 U.S.C. § 2000c-1.  RLUIPA protects institutionalized persons

"who are unable freely to attend to their religious needs and are

therefore dependent on the government's permission and

accommodation for exercise of their religion."  <u>Cutter</u>, 544 U.S.

at 721.  Persons aggrieved under the statute may file an action

in federal court against states, state officials, and persons

acting under color of state law for "appropriate relief."  <u>Id.</u>

§ 2000cc-2(a).  The administrative remedy exhaustion requirements

and other limitations imposed by the Prison Litigation Reform Act

of 1995, 42 U.S.C. § 1997e, apply to RLUIPA claims filed by

prisoners.  <u>See</u> 28 U.S.C. § 2000cc-2(e).

A RLUIPA claim has four elements.  <u>See</u> <u>Spratt v. R.I. Dep't</u>

<u>of Corrs.</u>, 482 F.3d 33, 38 (1st Cir. 2007).  A plaintiff must

allege (1) that she or he is an institutionalized person whose

religious exercise has been burdened; and (2) the burden is

substantial.  <u>See</u> <u>id.</u>  "Once a plaintiff has established that his

[or her] religious exercise has been substantially burdened, the

onus shifts to the government to show (3) that the burden

furthers a compelling governmental interest and (4) that the

burden is the least restrictive means of achieving that

compelling interest."  Id. (citing 42 U.S.C. § 2000cc-2(b) (if
plaintiff produces prima facie evidence to support claim,
government shall bear burden of persuasion on any element of
claim except that plaintiff shall bear burden of persuasion on
whether law or government practice substantially burdens exercise
of religion)).

     The First Circuit has assumed, without deciding, that a
substantial burden may be shown in cases where the government
"puts 'substantial pressure on an adherent to modify his behavior
and to violate his beliefs.'"  Hudson v. Dennehy, 538 F. Supp. 2d
400, 409 (D. Mass. 2008) (quoting Thomas v. Rev. Bd. of Ind. Emp.
Sec. Div., 450 U.S. 707, 718 (1981), and citing Spratt, 482 F.3d
at 38 (assuming without deciding that Thomas standard applies to
RLUIPA claims)).  A prison policy that completely prevents an
individual from engaging in one type of religious exercise, upon
the threat of punishment, imposes a substantial burden on that
individual's exercise of religion.  See Spratt, 482 F.3d at 38
(preacher prohibited from preaching anywhere on prison grounds,
upon threat of disciplinary sanctions, has made prima facie
showing that his religious exercise has been substantially
burdened, if Thomas standard is presumed applicable).

16

Here, Farrow has asserted facts suggesting that the
meaningful practice of his religion requires him to have contact
with the pipe, tobacco, knicknick, and smudging herbs, as well as
the sacred objects kept in his cell.  Because of the impact of
PPD 7.17, the lack of outside volunteers coming to NCF on a more
frequent basis, and the rules against storing certain items in
his cell, Farrow is prohibited from praying at NCF 361 days per
year.  Additionally, ceremonial drumming is critical to Farrow's
religious practices during those days when sweat lodges occur at
NCF, and at other times.  PPD 7.17 further unreasonably restricts
Farrow's ability to practice his religion by limiting his access
to drumming for religious purposes.  Prisoners violating the
policies at issue presumably risk disciplinary sanctions.  The
factual allegations in the complaint are sufficient to state a
claim upon which injunctive relief may be granted under RLUIPA as
to these policies.  Accordingly, I have directed service of the
RLUIPA claims.

<u>Conclusion</u>

For reasons stated above, I recommend dismissal of the
individual capacity claims asserted against defendants.  In an
Order issued this date, I have directed service of the RLUIPA

claims and the section 1983 claims, asserted against defendants in their official capacity.

Any objections to this Report and Recommendation must be filed within fourteen (14) days of receipt of this notice. Failure to file objections within the specified time waives the right to appeal the district court's order.  See Unauth. Pract. of Law Comm. v. Gordon, 979 F.2d 11, 13-14 (1st Cir. 1992); United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986).

_____
Landya B. McCafferty
United States Magistrate Judge

Date:  June 9, 2010

cc:  Prayer Feather Farrow, pro se

LBM:nmd